UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

CACTIL, LLC d/b/a MyChargeBack.com,

Petitioner,

v.

UNITED STATES OF AMERICA,

Respondent.

Case No.:  24cv1270-LL-AHG

**INTERIM ORDER FOR SUPPLEMENTAL BRIEFING RE PETITION**

Before the Court is Petitioner Cactil, LLC's ("Cactil") Petition for Return of Property Pursuant to Federal Rule of Criminal Procedure 41(g). ECF No. 30 ("Petition" or "Pet.").[1] Respondent the United States of America ("the Government") filed an opposition [ECF No. 20 ("Opposition" or "Oppo.")], and Petitioner filed a Reply [ECF No. 28 ("Reply")].[2] For the reasons set forth below, the Court finds it has jurisdiction to decide the merits of Cactil's Petition and orders supplemental briefing.

---

[1] Citations to docketed materials refer to the CM/ECF information printed at the top of each page.

[2] Cactil filed a Notice of Supplemental Information in Support of its Rule 41(g) Petition [ECF No. 31], and the Government filed a Motion to Strike Cactil, LLC's Unauthorized

## I.    BACKGROUND

The following factual allegations are contained in the Petition.

On June 26, 2024, the Federal Bureau of Investigation (FBI) executed a seizure warrant for the website domain MyChargeBack.com, which is owned and operated by Cactil. Pet. at 5. The application provided in support of obtaining the seizure warrant is under seal and has not been disclosed to Cactil. *Id.*at 7.

Cactil is "a financial consulting company founded in 2016 that assists customers who are the victims of financial fraud by providing those individuals information and advice that can help them dispute unauthorized charges with their banks and/or trace and locate stolen cryptocurrency in an effort to recover it." *Id.* at 6. Approximately one-third of Cactil's business provided banking and credit card dispute services, and two-thirds provided cryptocurrency investigative services. *Id.*

Cactil's website had a portal on a sub-domain that provided "real-time access to client case status and updates" and hosted a client center that provided secured messaging capabilities for active clients. *Id.* Cactil's "email domain is linked to the MyChargeBack.com website through a third-party security tool" and "when the domain was seized, access to the company's email server was blocked, severing email communications." *Id.* at 6–7.

The seizure warrant included the following:

---

Sur-Reply [ECF No. 32]. Cactil then filed an alternative Motion for Leave to File Notice of Supplemental Information [ECF No. 33], which the Government opposed [ECF No. 34]. Cactil filed an additional Motion to File Supplemental Notice in Support of its Rule 41(g) Petition [ECF No. 35], which the Government moved to strike [ECF No. 36]. The Court **DENIES AS MOOT** the motions for leave to file notice of supplemental information [ECF Nos. 33, 35] and the motions to strike [ECF Nos. 32, 36] because the supplemental information was not needed for the Court to make its determination. If appropriate, Cactil may incorporate its proffered supplemental information in the supplemental briefing ordered by the Court. *See infra* Part IV.

The Government will display a notice on the website to which the Subject Domain will resolve. That notice will consist of law enforcement emblems and the following text (or substantially similar text):

"This domain has been seized by the Federal Bureau of Investigation in accordance with a seizure warrant issued pursuant to 18 U.S.C. §§ 981, 982, by the United States District Court for the Southern District of California as part of a joint law enforcement action by:

The U.S. Attorney's Office for the Southern District of California
Federal Bureau of Investigation.

For additional information, see https://www.justice.gov"

ECF No. 30-1 at 4–5. The statutes referenced in the notice authorized by the warrant are provisions for civil and criminal forfeiture. *Id.* at 8; 18 U.S.C. §§ 981, 982.

After the website was seized, the following notice was posted on it:



Pet. at 8. The statutes in the actual notice refer to criminal wire fraud and conspiracy to commit fraud. *Id.*; 18 U.S.C. §§ 1343, 1349.

When Cactil's counsel called and spoke with Assistant United States Attorney Joshua Mellor on two different occasions regarding the website's seizure, Mr. Mellor

stated, *inter alia*, that several companies which offer "cryptocurrency refund" services were being investigated, including MyChargeBack.com; that "sometimes, they do manage to get money back" but "most" of the business "is a scam to revictimize [customers]"; that the seizure was a "first step in preventing further fraud from occurring"; that the notice was a "public service" and "a reporting mechanism for victims"; and that the investigation was "only focusing on the crypto recovery side" of MyChargeBack.com's business and not the credit card chargeback services. Pet. at 8–9; ECF No. 30-2, Declaration of John Ghose ("Ghose Decl."), ¶¶ 4–9.

Cactil filed its Petition on July 22, 2024 under seal. ECF Nos. 1, 5. When its motion to unseal the Petition was granted, Cactil refiled the Petition on the docket. ECF Nos. 29, 30.

## II.    LEGAL STANDARD

Under Rule 41(g) of the Federal Rules of Criminal Procedure, "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return" and if granted, "the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings." Fed. R. Crim. P. 41(g). Rule 41(g) is ordinarily used to seek return of property after an indictment is issued, but when there are no criminal proceedings pending against the movant, a district court has discretion to hear the motion as a civil equitable proceeding. *United States v. Kama*, 394 F.3d 1236, 1237–38 (9th Cir. 2005) (quoting *Ramsden v. United States,* 2 F.3d 322, 324 (9th Cir.1993)).

Because courts must "exercise 'caution and restraint' before assuming jurisdiction" over a Rule 41(g) motion, they must consider the following four factors to determine if jurisdiction is warranted: "1) whether the Government displayed a callous disregard for the constitutional rights of the movant; 2) whether the movant has an individual interest in and need for the property he wants returned; 3) whether the movant would be irreparably injured by denying return of the property; and 4) whether the movant has an adequate remedy at law for the redress of his grievance." *Ramsden*, 2 F.3d at 324–25 (citations

omitted).[3] If jurisdiction is warranted, the court turns to the merits and "considers whether the government's retention of the property would be reasonable under all of the circumstances." *Kardoh v. United States*, 572 F.3d 697, 700 (9th Cir. 2009) (citing *Ramsden*, 2 F.3d at 326). "The United States' retention of the property generally is reasonable if it has a need for the property in an investigation or prosecution." *Ramsden*, 2 F.3d at 326. "However, if the United States' legitimate interests can be satisfied even if the property is returned, continued retention of the property would become unreasonable." *Id.* (internal quotation marks and citation omitted).

When there are no criminal proceedings pending at the time of filing, the Rule 41(g) motion is treated as a civil complaint governed by the Federal Rules of Civil Procedure, and the government's opposition to a Rule 41(g) motion is treated as the equivalent of a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss. *United States v. Ibrahim*, 522 F.3d 1003, 1007 (9th Cir. 2008) (citing *United States v. Ritchie*, 342 F.3d 903, 906–07 (9th Cir. 2003)). If the court cannot decide the matter on the pleadings, it must convert the government's opposition into a motion for summary judgment. *Id.* at 1008. If the government is unable to meet the summary judgment standard, "the motion for return of property (now being treated as a civil complaint) should not be dismissed at the summary judgment stage, and the court should go forward with additional proceedings consistent with the Federal Rules of Civil Procedure." *Id.* "Rule 41(g) requires the district court to 'receive evidence on any factual issue necessary to decide the motion,' but it does not specifically require an in-person hearing." *United States v. Cantu*, 667 F. App'x 611, 612 (9th Cir. 2016) (quoting Fed. R. Crim. P. 41(g)).

## III.    DISCUSSION

The Government argues that Cactil's Rule 41(g) Petition should be denied because 18 U.S.C. § 983 applies and Cactil cannot show entitlement to relief under that statute and

---

[3] The court in *Ramsden* discussed the motion to return seized property under Rule 41(e), which became Rule 41(g) in 2002. *Kama*, 394 F.3d at 1238 n.1.

its conditions for the release of seized property. Oppo. at 8. It further argues that even if Rule 41(g) applies, the *Ramsden* factors weigh against this Court exercising equitable jurisdiction. *Id.*

As a preliminary matter, the Court finds that Cactil's Petition for the return of its seized property is properly brought under Rule 41(g). Section 983 governs civil forfeiture proceedings, however there is no evidence that the Government has filed a civil forfeiture action for Cactil's website. *See* 18 U.S.C. § 983. Thus, in the absence of a pending civil forfeiture action or a pending criminal proceeding against Cactil, Rule 41(g) is appropriate. *Ibrahim*, 522 F.3d at 1007; *Kama*, 394 F.3d at 1237–38 (quoting *Ramsden,* 2 F.3d at 324); *see also United States v. U.S. Currency $83,310.78*, 851 F.2d 1231, 1235 (9th Cir. 1988) ("Accordingly, when a civil forfeiture proceeding is pending, there is no need to fashion an equitable remedy to secure justice for the claimant.").

The Court next considers whether it should exercise equitable jurisdiction by balancing the *Ramsden* factors. Because no criminal proceeding is pending, the Court construes Cactil's Petition as a complaint and the Government's Opposition as a motion to dismiss.[4] *Ibrahim*, 522 F.3d at 1007 (9th Cir. 2008). As such, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)). A court may "consider certain materials— documents attached to the complaint, documents incorporated by reference in the

/ / /

---

[4] For clarity, the Court will refer to Cactil's Rule 41(g) motion as "the Petition," the Government's brief as "the Opposition," and Cactil's reply as "the Reply" throughout this Order.

complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Ritchie*, 342 F.3d at 908.

### A.    Equitable Jurisdiction

#### 1.    Callous Disregard

Cactil contends that the Government callously disregarded its Fourth Amendment rights by "exceeding the purpose and scope of the Court's seizure warrant." Pet. at 13. Specifically, it argues that the Government's actions were unlawful because (1) the Government "purposefully used a Rule 41 seizure warrant as a blunt tool to destroy a business based solely on *ex parte*, under seal allegations of misconduct;" (2) its entire business was intentionally disrupted, "including business offerings that are not subject to criminal investigation;" (3) the Government posted images and warnings on the seized website that "clearly exceed the limited notice authorized by the Court's warrant;" (4) the Government "misappropriated the MyChargeBack.com domain to accuse Cactil of fraud and conspiracy to commit fraud and to encourage Cactil customers to assist in the government's investigation;" and (5) Cactil was improperly deprived "of its access to its business email and other related services, a restriction that is not authorized by the Court's warrant." *Id.*

The Court finds the valid seizure warrant, supported by a finding of probable cause, defeats most of Cactil's arguments regarding callous disregard of its Fourth Amendment rights. "It is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment." *United States v. Leon*, 468 U.S. 897, 921 (1984). Although the application for the seizure warrant is under seal, this is not an indication that probable cause was lacking. The warrant authorized the seizure of the domain MyChargeBack.com. ECF No. 30-1 at 4. It was not limited to certain parts of the domain. *Id.* When the domain was seized, it deprived Cactil of access to its functionality—including email—and disrupted its entire business. The Court finds this to be a logical and likely outcome when a business website domain is seized, rather than a callous disregard of any

1    constitutional rights. *See In re Chandler*, 270 F.R.D. 576, 579 (S.D. Cal. 2010) ("[T]he
2    government has not acted with 'callous disregard' of the constitutional rights of movants,
3    as the government seized the property pursuant to a warrant issued by a neutral fact
4    finder.").

5        Whether the Government exceeded the purpose and scope of the seizure warrant in
6    regard to the notice posted on the website is a closer call. The manner in which a warrant
7    is executed is subject to a judicial review of its reasonableness. *Dalia v. United States*,
8    441 U.S. 238, 258 (1979). The seizure warrant directed a notice to be displayed on the
9    website consisting of law enforcement emblems and substantially similar text to fairly
10   neutral language regarding the seizure of the domain by the FBI. ECF No. 30-1 at 4–5. The
11   actual notice includes a shadowy figure and graphics in the background of the text and a
12   large title indicating that the website has been seized. Pet. at 8. The text of the actual notice
13   differs in two sections to the language authorized in the warrant: (1) instead of including
14   the statutes for criminal and civil forfeiture, it includes statutes for criminal wire fraud and
15   conspiracy to commit fraud; and (2) it adds a sentence providing an email to people who
16   believe they have been the victims of a cryptocurrency return fraud scheme and wish to
17   contact the FBI. Pet. at 8.

18       The Court finds the title, shadowy figure, and graphics to be substantially similar to
19   what was permitted in the warrant and not an unreasonable execution of the warrant. The
20   graphics and figure could be interpreted as representing law enforcement and is sufficiently
21   vague and thus, neutral. The Court does not find them to exceed the scope of the warrant
22   that allowed law enforcement emblems and notice that the FBI seized the domain.

23       The text that refers to the criminal statutes and the fraud scheme, however, is not
24   substantially similar to what was permitted by the warrant. The Court finds their inclusion
25   to be an unreasonable execution of the warrant because nothing in the warrant permitted
26   reference to a cryptocurrency return fraud scheme, criminal wire fraud, or conspiracy to
27   commit fraud. *Cf. Warkentine v. Soria*, 152 F. Supp. 3d 1269, 1286 (E.D. Cal. 2016) ("The
28   requirement that warrants shall particularly describe the things to be seized makes general

24cv1270-LL-AHG

searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant." (quoting *Stanford v. State of Tex.*, 379 U.S. 476, 485–86 (1965))).

Accordingly, the Court finds Cactil has demonstrated a callous disregard for its constitutional rights during the execution of the seizure warrant when the Government included text in the notice that exceeded the terms of the warrant. This factor weighs toward exercising equitable jurisdiction.

### 2. Individual Interest In and Need for the Property

There is no dispute that Cactil owns the seized website domain. Oppo. at 21. Cactil argues that it cannot operate its business without its website. Pet. at 16. The Government contends that the seizure does not prevent Cactil from operating its business using its other websites. Oppo. at 21.

The Court finds Cactil has demonstrated an individual interest in and need for the website domain. Cactil disputes the Government's contention that it owns at least four other websites similar to MyChargeBack.com. Reply at 12–13. However, even if Cactil owns other websites offering similar services, this does not defeat Cactil's argument that it cannot operate the business of MyChargeBack.com without control of the website and its email. *See Ramsden*, 2 F.3d at 325 (finding Ramsden has an interest in and need for the documents seized because they were necessary for Ramsden to run his business). This factor weighs toward exercising equitable jurisdiction.

### 3. Irreparable Injury

Cactil contends that it will be irreparably harmed if the website is not returned because it "cannot properly communicate with its clients regarding its services, the status of its work, or even the government's allegations." Pet. at 16. Cactil further argues that the seizure and the notice are damaging Cactil's reputation with its customers and prospective customers and crippling its business. *Id.* at 17; Reply at 14–15.

The Government argues that Cactil could communicate with customers by telephone, mail, press release, public statement; that it has not shown the survival of its

business is imminently threatened; that its reputational damage does not rise to irreparable harm; and that its loss of business and goodwill is "largely unsupported." Oppo. at 22–23.

The Court finds Cactil will be irreparably harmed if the website is not returned. The parts of the seizure notice on the website that reference a cryptocurrency return fraud scheme and that the seizure was issued pursuant to the statutes for criminal wire fraud and conspiracy to commit fraud are effectively allegations that Cactil is committing fraud, particularly because one of the business services it offers is tracing and locating stolen cryptocurrency. Inferences of fraud from the FBI on a public business website used to solicit customers will logically lead to real reputational damage, not just the possibility of damage. Damages to goodwill and reputation can qualify as irreparable harm. *Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991) (citation omitted). Cactil is not claiming reputational harm from "the mere threat of prosecution" as the Government contends. Oppo. at 23. In the case cited by the Government, the plaintiff claimed he would suffer irreparable harm if his seized documents were not returned because they could lead to his prosecution. *Ramsden*, 2 F.3d at 326. Here, Cactil is not arguing that the seized website could lead to prosecution, which would cause irreparable harm. Instead, it is claiming that the allegations of fraud in the seizure notice are causing irreparable harm to its reputation. Because references to fraud were not included in the notice authorized by the seizure warrant, the Court finds Cactil has demonstrated irreparable harm.[5] This factor weighs in favor of exercising equitable jurisdiction.

### 4. Adequate Remedy at Law

Cactil argues that it has no other available remedy at law to request the return of its property because neither a civil forfeiture proceeding nor a criminal indictment has been

---

[5] The Court does not make a finding on whether the website seizure has "effectively precluded Cactil from continuing operations" and thus causing irreparable harm. Pet. at 16.

filed. Pet. at 18. The Government contends that civil forfeiture proceedings are underway and Cactil's Petition is premature. Oppo. at 24.

The Court finds Cactil has no other adequate remedy at law to seek the return of its website. "[W]here the seizing party did not initiate forfeiture proceedings with regard to the property, federal courts generally hold that the Rule 41(g) movant does not have an adequate remedy at law." *United States v. Hurtado*, No. CV 09-4206 SVW (EX), 2009 WL 10671968, at *8 (C.D. Cal. Oct. 7, 2009) (collecting cases). To date, there is no indication that the Government has filed a civil forfeiture action. The Court is not persuaded by the Government's contention that the seizure of the website pursuant to a civil seizure warrant "initiated civil forfeiture proceedings governed by 18 U.S.C. § 983." Oppo. at 9. Until the civil forfeiture action is actually filed, Cactil has no adequate remedy at law for the return of its property. *See United States v. Eight Thousand Eight Hundred & Fifty Dollars ($8,850) in U.S. Currency*, 461 U.S. 555, 568–69 (1983) (noting that a claimant can "trigger rapid filing of a forfeiture action" by, *inter alia*, filing a motion under current Rule 41(g) for a return of the seized property); *Khudainatov v. United States*, No. 3:23-CV-01946-W-SBC, 2023 WL 7501393, at *3 (S.D. Cal. Nov. 13, 2023) (noting that when a civil forfeiture action has been filed, the owners "of the seized property suddenly have an adequate remedy to force the return of the property and the court hearing the Rule 41(g) civil case loses jurisdiction" (citation omitted)). This factor weighs toward exercising equitable jurisdiction.

### 5.    Equitable Jurisdiction is Warranted

Each of the *Ramsden* factors weighs toward exercising equitable jurisdiction. Therefore, the Court finds it has jurisdiction to decide the merits of Cactil's Rule 41(g) Petition.

### B.    Merits

Cactil argues that the Court should order the return of the MyChargeBack.com website to Cactil because the Government does not need it for evidentiary purposes and that it was instead seized as a "first step in preventing further fraud from occurring."

Pet. at 8–9, 18; Ghose Decl. ¶¶ 7, 9. The Government does not directly address the merits of Cactil's Petition, instead relying on its arguments that the Court should not exercise equitable jurisdiction, and that Cactil cannot satisfy the requirements of 18 U.S.C. § 983 for the return of its property. Oppo. at 11, 14, 29. However, in making these arguments, the Government acknowledges that "the Website's data can be copied and preserved," but also that it has established probable cause to believe that the website has been involved in violations of federal law by virtue of the valid seizure warrant, and that the website would be used to commit additional criminal acts if returned. *Id.* at 11, 13–14.

The Court reiterates the legal standard stated above. If jurisdiction is warranted, the court turns to the merits and "considers whether the government's retention of the property would be reasonable under all of the circumstances." *Kardoh*, 572 F.3d at 700 (citing *Ramsden*, 2 F.3d at 326). "The United States' retention of the property generally is reasonable if it has a need for the property in an investigation or prosecution." *Ramsden*, 2 F.3d at 326. "However, if the United States' legitimate interests can be satisfied even if the property is returned, continued retention of the property would become unreasonable." *Id.* (internal quotation marks and citation omitted).

The Court is unable to reach the merits pursuant to the procedure required by the Ninth Circuit and requires supplemental briefing. The Court construed the Government's Opposition as a motion to dismiss, but it cannot decide the matter on the pleadings and must now convert the Government's Opposition into a motion for summary judgment. *Ibrahim*, 522 F.3d at 1008. "Then, pursuant to the Federal Rules of Civil Procedure, the court should determine whether the government has demonstrated that there is no 'genuine issue as to any material fact,' and that it is 'entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)). However, the Court is unable to convert the Government's Opposition into a motion for summary judgment because the Government has not legally or factually supported its arguments for retaining the website with any admissible evidence in conformance with Federal Rule of Civil Procedure 56.

/ / /

## IV.  CONCLUSION

The Court finds it has jurisdiction to reach the merits of Cactil's Rule 41(g) Petition for return of its property but requires supplemental briefing to do so. Accordingly, the Court **ORDERS** as follows:

1.      On or before **<u>January 29, 2025</u>**, the Government shall file a Supplemental Motion for Summary Judgment addressing whether its retention of Cactil's property would be reasonable under all of the circumstances.

2.      On or before **<u>February 12, 2025</u>**, Cactil shall file an Opposition to the Supplemental Motion for Summary Judgment.

3.      On or before **<u>February 19, 2025</u>**, the Government may file a Reply to Cactil's Opposition.

4.      The parties shall conform to the undersigned's Civil Chambers Rules on the Court's website regarding motions for summary judgment. *See* Judge Lopez Civil Chambers Rules, Section 3.F.

**IT IS SO ORDERED**.

Dated:  January 15, 2025

_____
Honorable Linda Lopez
United States District Judge